# UNITED STATES DISTRICT COURT
for the
### Western District of Kentucky
### Louisville Division

| | | |
|---|---|---|
| Reginald Green | ) | |
|    *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No.  3:17-cv-204-TBR |
| | ) | |
| ARS Account Resolution Services | ) | |
| *Assumed name for* | ) | |
| Healthcare Revenue Recovery | ) | |
|    Group, LLC | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    Corporation Service Company | ) | |
|    421 W. Main Street | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| GTE Wireless, Inc. as a General Partner | ) | |
| of Verizon Wireless | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| National Credit Systems, Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| Santander Consumer USA, Inc. | ) | |
|    *Defendant* | ) | |
| Serve: | ) | |
|    CT Corporation System | ) | |
|    306 W Main Street, Suite 512 | ) | |
|    Frankfort, KY 40601 | ) | |
| | ) | |
| Wakefield & Associates, Inc. | ) | |

|  |  |
|---|---|
| *Defendant* | ) |
| Serve: | ) |
| Incorp Service, Inc. | ) |
| 828 Lane Allen Road, Suite 219 | ) |
| Lexington, KY 40504 | ) |
|  | ) |

# COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is an action brought by a consumer for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiff seeks actual and statutory damages.

### JURISDICTION

2. This Court has jurisdiction pursuant to FDCPA, 15 U.S.C. §1692k(d); the FCRA, 15 U.S.C. § 1681p; and 28 U.S.C. § 1367.

### PARTIES

3. Plaintiff Reginald Green is a natural person who resides in Jefferson County, KY. Mr. Green is a "consumer" within the meaning of the FDCPA, defined at 15 U.S.C. § 1692a(3); and the FCRA, as defined at 15 U.S.C § 1681a (c).

4. Defendant ARS Account Resolution Services, assumed name for Healthcare Revenue Recovery Group, LLC ("ARS"), is a Florida corporation which has registered with the Kentucky Secretary of State. ARS's principal place of business is located at 1643 North Harrison Parkway, Building H, Suite 100, Sunrise, FL 33323.

5. ARS regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6). ARS is also a furnisher of information within the meaning of the FCRA.

6. GTE Wireless, Inc., as general partner of Verizon Wireless ("Verizon"), is a Delaware corporation which has registered with the Kentucky Secretary of State. Verizon's principal place of business is located at One Verizon Way, P.O. Box 627, Basking Ridge, NJ 07920-1097.

7. Verizon is a furnisher of information within the meaning of the FCRA.

8. National Credit Systems, Inc. ("NCS") is a Georgia corporation which has registered with the Kentucky Secretary of State. NCS's principal place of business is located at 3750 Naturally Fresh Boulevard, Atlanta, GA 30349.

9. NCS regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6). NCS is also a furnisher of information within the meaning of the FCRA.

10. Santander Consumer USA, Inc. ("Santander") is an Illinois corporation which has registered with the Kentucky Secretary of State. Santander's principal place of business is located at 1601 Elm Street, Suite 800, Dallas, TX 75201.

11. Santander is a furnisher of information within the meaning of the FCRA.

12. Wakefield & Associates, Inc. ("Wakefield") is a Colorado corporation which has registered with the Kentucky Secretary of State. Wakefield's principal place of business is located at 10800 E. Bethany Drive, #450, Aurora, CO 80014.

13. Wakefield regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6). Wakefield is also a furnisher of information within the meaning of the FCRA.

## STATEMENT OF FACTS

14. Mr. Green wants to buy his own home.

15. In order to purchase the home of his dreams, Mr. Green has to qualify for a home loan.

16. In order to qualify for the best interest rate possible, Mr. Green needs his credit score to be as high as possible.

17. Mr. Green's credit score depends directly on the information on his consumer credit reports.

18. Consequently, Mr. Green routinely monitors his credit reports from all three major consumer reporting agencies ("CRA's"): Experian, Equifax, and Trans Union.

19. Mr. Green discovered several errors on his consumer credit reports.

20. In order to correct these errors, Mr. Green sent dispute letters to Experian, Equifax, and Trans Union earlier this year.

21. The letters effectuated some positive changes for Mr. Green, by eliminating several of the errors on his consumer credit reports. Some errors, however, remained. The claims in this action concern the uncorrected errors on Mr. Green's credit report.

I.     **Facts as to ARS Account Resolution Services**

22.    Mr. Green discovered that ARS Account Resolution Services ("ARS") was furnishing false negative credit information concerning an alleged medical debt to Inphynet South Broward, Inc. ("Inphynet").

23.    ARS furnished the negative credit information to the CRA's concerning the Inphynet debt for purposes of collecting the debt from him.

24.    Upon information and belief, the Inphynet debt was a medical debt incurred for personal or family purposes, which makes the Inphynet debt a "debt" within the meaning of the FDCPA.

25.    Inphynet is a health clinic located in Fort Lauderdale, FL. Mr. Green has not visited Florida for decades. Inphynet did not treat Mr. Green.

26.    Mr. Green sent dispute letters to one or more of the CRA's disputing the false and inaccurate credit information furnished by ARS concerning the Inphynet debt.

8.     One or more of the CRA's sent ARS notice of Mr. Green's dispute, which thereby triggered ARS's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the Inphynet debt.

9.     ARS failed to conduct a reasonable investigation into Mr. Green's dispute concerning the negative credit information concerning Mr. Green and the alleged ARS debt that ARS is furnishing to one or more consumer reporting agencies.

10.    ARS falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

11.    As a result of ARS's failure to conduct a reasonable investigation of Mr. Green's dispute, Mr. Green suffered actual damages in the form of a lowered credit score and denial of credit.

27.    ARS violated the FDCPA by attempting to collect a debt from Mr. Green that he did not owe.

28.    ARS violated the FCRA by failing to conduct a reasonable investigation of Mr. Green's dispute.

II.    **Facts as to National Credit Systems, Inc.**

29.    Mr. Green discovered that National Credit Systems, Inc. ("NCS") was furnishing negative credit information conceding a residential lease with Falcon Crest Condos ("Falcon Crest").

30. NCS furnished the negative credit information to the CRA's concerning the Falcon Crest debt for purposes of collecting the debt from him.

31. The Falcon Crest debt concerns an apartment lease incurred for personal, family, or household purposes, which makes the Falcon Crest debt a "debt" within the meaning of the FDCPA.

32. Mr. Green sent dispute letters with one or of the CRA's disputing the false and inaccurate credit information furnished by NCS concerning the Falcon Crest debt. In particular, Mr. Green's dispute letters disputed the amount of the debt, including the inclusion of uncollectible and unenforceable legal fees in violation of KRS 383.570.

12. One or more of the CRA's sent NCS notice of Mr. Green's dispute, which thereby triggered NCS's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the Falcon Crest debt.

13. NCS failed to conduct a reasonable investigation into Mr. Green's dispute concerning the negative credit information concerning Mr. Green and the alleged NCS debt that NCS is furnishing to one or more consumer reporting agencies.

14. NCS falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

15. As a result of NCS's failure to conduct a reasonable investigation of Mr. Green's dispute, Mr. Green suffered actual damages in the form of a lowered credit score and denial of credit.

33. Falcon Crest violated the FDCPA by **(i)** attempting to collect a debt from Mr. Green costs and fees that he did not owe and that it had no legal right to collect from him; **(ii)** reporting false credit information concerning the Falcon Crest debt; and **(ii)** misrepresenting the amount of the Falcon Crest debt.

21. NCS violated the FCRA by failing to conduct a reasonable investigation of Mr. Green's dispute and by failing to correct the inaccurate credit information it is furnishing to the CRA's.

### III. Facts as to Santander Consumer USA, Inc.

22. Mr. Green discovered that Santander Consumer USA, Inc. ("Santander") was furnishing negative credit information to one or more CRA about him related to a car repossession.

23. After repossessing the vehicle, Santander failed to provide Mr. Green with notice of the sale or the results of the sale.

24. Consequently, Santander is barred from claiming or collecting a deficiency balance from Mr. Green under Kentucky's UCC. KRS 355.9-601 *et seq*.

25. In addition to furnishing information concerning a non-existent deficiency balance, Santander was also furnishing the incorrect last payment date on Mr. Green's credit reports.

26. Santander was reporting a last payment date of April 24, 2013. But the actual last payment date was most likely in April or May 2012.

27. The last payment date is a material item on a consumer credit report because this establishes the date of last activity on the account ("DLA").

28. The DLA is a factor in credit scoring. The more recent the DLA on negative accounts the more negative the impact on a consumer's credit score.

29. The DLA is also the determinative date for the limitation of reporting debts on credit reports under 15 U.S.C. § 1681c.

30. Mr. Green sent dispute letters with one or of the CRA's disputing the false and inaccurate credit information furnished by Santander. The dispute clearly stated that Mr. Green had an open account with Santander since 2007 and that he had never been in default on the account.

31. One or more of the CRA's sent Santander notice of Mr. Green's dispute, which thereby triggered Santander's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the alleged Santander debt.

32. Santander failed to conduct a reasonable investigation into Mr. Green's dispute concerning the negative credit information concerning Mr. Green and the alleged Santander debt that Santander is furnishing to one or more consumer reporting agencies.

33. Santander falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

34. As a result of Santander's failure to conduct a reasonable investigation of Mr. Green's dispute, Mr. Green suffered actual damages in the form of a lowered credit score and denial of credit.

35. Santander violated the FCRA by failing to conduct a reasonable investigation of Mr. Green's dispute and by failing to correct the inaccurate credit information it is furnishing to the CRA's.

## IV.   Facts as to GTE Wireless, Inc./Verizon Wireless

36. Mr. Green discovered that Verizon Wireless ("Verizon") was furnishing negative credit information to one or more CRA about him in connection with a non-existent debt.

37. Mr. Green sent dispute letters with one or of the CRA's disputing the false and

inaccurate credit information furnished by Verizon. The dispute clearly stated that Mr. Green had an open account in good standing with Verizon since 2007 and that he had never been in default on the account.

38. One or more of the CRA's sent Verizon notice of Mr. Green's dispute, which thereby triggered Verizon's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the alleged Verizon debt.

39. Verizon failed to conduct a reasonable investigation into Mr. Green's dispute concerning the negative credit information concerning Mr. Green and the alleged Verizon debt that Verizon is furnishing to one or more consumer reporting agencies.

40. Verizon falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

41. As a result of Verizon's failure to conduct a reasonable investigation of Mr. Green's dispute, Mr. Green suffered actual damages in the form of a lowered credit score and denial of credit.

42. Verizon violated the FCRA by failing to conduct a reasonable investigation of Mr. Green's dispute and by failing to correct the inaccurate credit information it is furnishing to the CRA's.

**V.      Facts as to Wakefield & Associates, Inc.**

43. Mr. Green discovered that Wakefield & Associates, Inc. ("Wakefield") was furnishing false negative credit information concerning two alleged medical debts to University Physicians, IN ("University Physicians").

44. Wakefield furnished the negative credit information to the CRA's concerning the University Physicians debts for purposes of collecting the debts from him.

45. Upon information and belief, the University Physicians debts were medical debts incurred for personal or family purposes, which makes the University Physicians debts both "debt" within the meaning of the FDCPA.

46. The information furnished by Wakefield concerning the two University Physicians debts is summarized as follows:

Wakefield & Associates, Inc.
P.O. Box 58
Fort Morgan, CO 80701
Original Creditor:   University Physicians, IN
Balance 1:           $273
High Balance 1:      $250

      Balance 2:               $262
      High Balance 2:      $239
      Opened Date:  November 9, 2015

47. The above information concerning the two University Physicians medical debts is false because it includes additional costs and fees that Wakefield had no legal right to collect from Mr. Green.

48. Wakefield violated the FDCPA by transmitting false credit information concerning Mr. Green and the University Physicians debts to one or more consumer reporting agencies, and by adding interest and/or fees to the University Physicians debts that Wakefield had no legal right to recover from Mr. Green.

### Claims for Relief: Violation of the Fair Credit Reporting Act

**I.**    **Claims against Account Resolution Services**

    **A.**    **Fair Debt Collection Practices Act (FDCPA)**

49. The foregoing acts and omissions of Account Resolution Services, assumed name for Healthcare Revenue Recovery Group, LLC ("ARS") constitute violations of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

    **B**.    **Fair Credit Reporting Act (FCRA)**

50. The foregoing acts and omissions of ARS violate the FCRA.

    **i.**    **Violations of 15 U.S.C. §1681n**

51. After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green and the Inphynet debt, ARS willfully failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that ARS was furnishing false negative credit information about Mr. Green and the Inphynet debt.

52. ARS willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to ARS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

53. ARS willfully failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Inphynet debt as required by 15 U.S.C. §1681s-2(b)(C).

54. Mr. Green has a private right of action to assert claims against ARS arising under 15 U.S.C. §1681s-2(b).

55. ARS is liable to Mr. Green for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681n.

### ii. Violation of 15 U.S.C. §1681o

56. After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green and the Inphynet debt, ARS negligently failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that ARS was furnishing false negative credit information about Mr. Green and the Inphynet debt.

57. ARS negligently failed to review all relevant information purportedly provided by Equifax, Experian, and Trans Union to ARS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

58. ARS negligently failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Inphynet debt as required by 15 U.S.C. §1681s-2(b)(C).

59. Mr. Green has a private right of action to assert claims against ARS arising under 15 U.S.C. §1681s-2(b).

60. ARS is liable to Mr. Green for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

## II. Claims against National Credit Systems, Inc.

### A. Fair Debt Collection Practices Act (FDCPA)

61. The foregoing acts and omissions of National Credit Systems, Inc. ("NCS") constitute violations of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

### B. Fair Credit Reporting Act (FCRA)

62. The foregoing acts and omissions of NCS violate the FCRA.

### i. Violations of 15 U.S.C. §1681n

63. After being informed by Equifax, Experian, and Trans Union that Mr. Green

disputed the accuracy of the information it was providing concerning Mr. Green and the Falcon Crest debt, NCS willfully failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that NCS was furnishing false negative credit information about Mr. Green and the Falcon Crest debt.

64. NCS willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to NCS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

65. NCS willfully failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Falcon Crest debt as required by 15 U.S.C. §1681s-2(b)(C).

66. Mr. Green has a private right of action to assert claims against NCS arising under 15 U.S.C. §1681s-2(b).

67. NCS is liable to Mr. Green for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681n.

### ii. Violation of 15 U.S.C. §1681o

68. After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green and the Falcon Crest debt, NCS negligently failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that NCS was furnishing false negative credit information about Mr. Green and the Falcon Crest debt.

69. NCS negligently failed to review all relevant information purportedly provided by Equifax, Experian, and Trans Union to NCS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

70. NCS negligently failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Falcon Crest debt as required by 15 U.S.C. §1681s-2(b)(C).

71. Mr. Green has a private right of action to assert claims against NCS arising under 15 U.S.C. §1681s-2(b).

72. NCS is liable to Mr. Green for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

**III.     Claims against Santander Consumer USA, Inc.**

    **A.     Fair Credit Reporting Act (FCRA)**

73.     The foregoing acts and omissions of Santander Consumer USA, Inc. ("Santander") violate the FCRA.

    **i.     Violations of 15 U.S.C. §1681n**

74.     After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green and the Santander debt, Santander willfully failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that Santander was furnishing false negative credit information about Mr. Green and the Santander debt.

75.     Santander willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to Santander in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

76.     Santander willfully failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Santander debt as required by 15 U.S.C. §1681s-2(b)(C).

77.     Mr. Green has a private right of action to assert claims against Santander arising under 15 U.S.C. §1681s-2(b).

78.     Santander is liable to Mr. Green for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681n.

    **ii.     Violation of 15 U.S.C. §1681o**

79.     After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green, Santander negligently failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that Santander was furnishing false negative credit information about Mr. Green and the Santander debt.

80.     Santander negligently failed to review all relevant information purportedly provided by Equifax, Experian, and Trans Union to Santander in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

81.     Santander negligently failed to direct Equifax, Experian, and Trans Union to delete

inaccurate information about Mr. Green pertaining to the Santander debt as required by 15 U.S.C. §1681s-2(b)(C).

82. Mr. Green has a private right of action to assert claims against Santander arising under 15 U.S.C. §1681s-2(b).

83. Santander is liable to Mr. Green for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

V. **Claims against GTE Wireless, Inc./Verizon Wireless**

    A. **Fair Credit Reporting Act (FCRA)**

84. The foregoing acts and omissions of GTE Wireless, Inc./Verizon Wireless ("Verizon") violate the FCRA.

        i. **Violations of 15 U.S.C. §1681n**

85. After being informed by Equifax, Experian, and Trans Union that Mr. Green disputed the accuracy of the information it was providing concerning Mr. Green and the Verizon debt, Verizon willfully failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that Verizon was furnishing false negative credit information about Mr. Green and the Verizon debt.

86. Verizon willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to Verizon in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

87. Verizon willfully failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Verizon debt as required by 15 U.S.C. §1681s-2(b)(C).

88. Mr. Green has a private right of action to assert claims against Verizon arising under 15 U.S.C. §1681s-2(b).

89. Verizon is liable to Mr. Green for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681n.

        ii. **Violation of 15 U.S.C. §1681o**

90. After being informed by Equifax, Experian, and Trans Union that Mr. Green

disputed the accuracy of the information it was providing concerning Mr. Green, Verizon negligently failed to conduct a proper investigation of Mr. Green' disputes filed with Equifax, Experian, and Trans Union that Verizon was furnishing false negative credit information about Mr. Green and the Verizon debt.

91. Verizon negligently failed to review all relevant information purportedly provided by Equifax, Experian, and Trans Union to Verizon in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

92. Verizon negligently failed to direct Equifax, Experian, and Trans Union to delete inaccurate information about Mr. Green pertaining to the Verizon debt as required by 15 U.S.C. §1681s-2(b)(C).

93. Mr. Green has a private right of action to assert claims against Verizon arising under 15 U.S.C. §1681s-2(b).

94. Verizon is liable to Mr. Green for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. §1681o.

## VI. Claims against Wakefield & Associates, Inc.

### A. Fair Debt Collection Practices Act (FDCPA)

95. The foregoing acts and omissions of Wakefield & Associates, Inc. constitute violations of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Reginald Green, requests the Court grant him relief as follows:

a. Award Plaintiff actual damages;

b. Award Plaintiff statutory damages pursuant to the FDCPA and FCRA;

c. Award Plaintiff punitive damages pursuant to the FCRA;

d. Award Plaintiff reasonable attorney's fees and costs;

e. A trial by jury; and

-14-

  f.  Such other relief as may be just and proper.

        Respectfully Submitted,

        /s/ James H. Lawson
        **James H. Lawson**
        *Lawson at Law, PLLC*
        115 S. Sherrin Avenue, Suite 4
        Louisville, KY 40207
        Tel : (502) 473-6525
        Fax : (502) 473-6561
        Email: james@kyconsumerlaw.com